## Case No. 586.

### ASKEW v. ODENHEIMER.

Circuit Court, E. D. Pennsylvania. 1845.

[Cited in Union Mut. Life Ins. Co. v. Kellogg, Case No. 14,373. Nowhere reported; opinion not now accessible.]

## Case No. 587.

### ASKEW v. ODENHEIMER.

[Baldw. 380.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1831.

TRUSTS—COMPENSATION OF TRUSTEES — PARTNERSHIP—FRAUD BY COPARTNER — DESTRUCTION OF BOOKS AND PAPERS—EVIDENCE.

1. In Pennsylvania all trustees are entitled to a commission on moneys passing through their hands; the usual rate is five per cent, any departure therefrom is under special circumstances.

[See Burr v. McEwen, Case No. 2,193.]

2. If a partner who has committed frauds on the firm agrees to indemnify the injured party to his satisfaction, by an assignment of all the partnership effects for his indemnity, such assignment will be construed liberally in his favour, and will be reformed in equity so as to meet the intention of the parties in conformity with their agreement.

3. But the injured party will not be allowed to be the judge of his indemnity.

4. As a trustee he will be confined to such satisfaction as a court of equity deem reasonable.

5. If the books and papers of the firm have been destroyed or suppressed, false entries made in them, or no entries made by the partner who has charge of them to his debit, with a view to fraud, the injured partner may support a specific charge by his own affidavit, but not by one which specifies no amount under any particular item.

6. On a bill by the fraudulent partner for an account, the master may charge him on any evidence which is competent or admissible as proof of the item; he cannot hold the injured partner to such degree of proof, as would justify a charge under ordinary circumstances, against a customer or partner; there must however be some proof.

7. The general rules on which courts of equity act in odium spoliatoris.

[Cited in Hanson v. Lessee of Eustace, 2 How. (43 U. S.) 704.]

In equity. The bill set forth a partnership between the parties commencing in 1822, and terminating in March, 1829, when the following assignment was made by the complainant:

"Whereas, there is reason to believe, that in keeping the books of the firm of Askew & Odenheimer, errors and misentries have occurred, of which the amount cannot be ascertained, but which errors are injurious to the interests of John W. Odenheimer, one of the partners of said firm, and it is just and proper that he should be secured against any loss resulting from these errors and misentries, which have been made by his partner Joseph Askew: Now, therefore, be it known, that the said Joseph Askew, in order to secure to his partner, the said John W. Odenheimer, his full and just and undiminished share in the stock and profits of said firm, and in consideration of the sum of 10 dollars to him in hand paid by the said John; has granted, bargained, sold, assigned, trans-

---

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]

ferred, and set over, and by these presents, does grant, bargain, sell, assign, and transfer unto the said John, all the right, title, interest, property, claim, and demand whatsoever of him, the said Joseph, in law, in equity, or otherwise, in and to the moneys, goods, chattels, rights, credits, and effects, and in and to all the property, real and mixed, in which they the said Joseph and John are jointly at this time interested as partners in the above firm, or may be, to have and to hold to the said John, his heirs, executors, and administrators, to his and their use for ever: Provided always, however, that when an entire adjustment of the accounts of the firm be made, and debts due by the firm paid, all the deficiencies, losses and injuries resulting to the said John W. Odenheimer, shall be made up to him, to his reasonable satisfaction, this conveyance and transfer shall then cease to be operative; and the said John shall re-transfer the same to said Joseph. And it is further agreed between the parties hereto, that the business of the concern shall go on as usual, unless the said John W. Odenheimer shall find it necessary to stop the further progress, in which case, he is at full liberty to do so. And it is further agreed that the said John may proceed to collect the debts due, and wind up the said firm without any hindrance on the part of the said Joseph. In testimony whereof the said Joseph Askew, hath hereunto set his hand and seal this 25th day of April, A. D. 1829. Joseph Askew. Sealed and delivered in presence of Richard Paxson, Thomas Folwell. Proved before an alderman, by the oaths of the two subscribing witnesses on the 22d of May, 1829, and recorded on that day."

The complainant alleges that the errors and misentries were such as he thought himself entitled to make, without any injustice to his partner, in order to compensate himself for extra services to the firm, the amount of which did not exceed the sum saved in clerk hire, and was set forth in a schedule annexed to the bill. It then alleged, that the amount of errors and misentries had been ascertained, that all the objects of the assignment had been effected, that a large balance remained in the hands of the respondent, due to the complainant, which the former was applying to his own use. The prayer was for an account of what had been received since the assignment, of the amount of his claim on the complainant, for a re-. transfer of his share of the partnership effects, and the payment of the balance of money on hand.

The answer admits the partnership, by the terms of which the defendant was to do the out of door business, and complainant to attend to the books and in door business of the firm; it averred that there was great mismanagement by the complainant for some years, which he concealed by false entries in the books. That when called on to explain them, he promised to do so, but before this was done, a number of the books and papers of the firm were destroyed by fire, so that it became impossible to ascertain the extent of the frauds thus committed. That the respondent believed that he had sustained losses to the amount of 5000 dollars, exclusive of damages for breaking up the business of the firm, which was profitable, that he was not able to specify the extent with precision, but that they far exceeded the amount of damages stated in the bill, or in any account which had been made out. He therefore claimed to retain out of complainant's share of the partnership effects, a sum sufficient to cover the estimated amount of his losses by the misconduct of his partner. A great mass of testimony was taken, by which it clearly appeared that the complainant had been for some time in the habit of committing frauds on the firm, in the manner recited in the assignment and otherwise. The evidence of the destruction of some of the books and papers of the firm by fire, was very clear, and very strong to prove that it was wilfully done by complainant, to conceal the frauds he had committed. The case was referred to a master, who reported misentries to the amount of 889 dollars, and goods taken to the amount of 250 dollars, for which the complainant had not charged himself; the master reported a balance due to complainants of 5619 dollars and returned the depositions to the court. Both parties filed exceptions to the report, which were argued at length by counsel on both sides on the evidence and law, the latter of which only will be noticed.

Mr. Cadwalader and Mr. Binney, for complainant.

The suppression or destruction of books and papers by complainant, does not dispense with the production of evidence on part of respondent, though it will help slight or defective proof of a charge; every presumption is against the party who is guilty of suppression or spoliation, but there must be some prima facie evidence, sufficient to raise ground for the presumption, such as would authorize a jury to infer the fact. The court will not impose a penalty on complainant arbitrary in its amount, but will supply the defect and ascertain the truth as far as they can. Though by the terms of the assignment the correction of errors was to be ascertained to the satisfaction of respondent, it is not submitted to his arbitrary discretion to judge for himself; he must be reasonably satisfied, and the court will compel him to be satisfied when he is compensated to the full extent of the proof he makes of specific losses. Pandects, b. 2, §§ 6, 7; Poth. Obl. No. 48. So where a party covenanted that if a title was good, he would pay 60 pounds in three months after he was satisfied he held the land by an undisputed title. It was held incumbent on the defendant to

state a lawful claim adverse to, and better than the one conveyed. Folliard v. Wallace, 2 Johns. 395, 401. The respondent has not insisted on the right to claim, according to his own conscience; he has offered and gone into proof before the master, to ascertain the extent of the fraud, as a matter of account, which is a waiver of the right now assumed, by which he is bound. The assignment embraces only misentries, it was not intended to extend to the goods taken by respondent and not charged, this was never set up till the answer was put in, errors and misentries in the books refer to the face of the books, the meaning of the assignment is, that there shall be an accounting—an adjustment of the accounts of the company, when that is done the trust is terminated; the adjustment must be. to the reasonable satisfaction of the trustee, but the measure of the reason of a trustee, is the rule of reason prescribed by a court of equity. Jones v. Nabbs, Gilb. Ch. 146; Webb v. Shaftesbury, 7 Ves. 480. When a party insists on proof of a matter alleged against him, the degree of proof required depends on his position; if an allegation is made that a party has been deprived of evidence, it is answered when evidence is produced; here there is evidence as to the uncharged goods, to which the party will be confined, unless he will show that goods have been taken, which cannot be traced, or their amount ascertained.. Respondent has not sworn to the particular losses he has sustained, he is bound by the thirty-fifth rule of this court to specify his exceptions to the master's report, and the court will sustain none which are not made according to its rules, unless for special cause shown. The question before the court is, whether the master acted correctly on the evidence before him, or if he was wrong, what he ought to have done. No evidence will be received but what was before the master, if one general exception is taken, which includes several matters, and one is right, the whole exception fails. 2 Madd. Ch. [Pr.] 510. The master is a judge, no evidence is admissible after the report is settled, and the facts he finds are presumed to be true. Id. 511, 516. Exceptions are in the nature of special demurrers, the party must put his finger on the matters excepted to, [Wilkes v. Rogers,] 6 Johns. 592,—and references to a master have the same effect, whether they are made by agreement of parties, or the order of the court.

Mr. Kittera, for the respondent.

In making the assignment, it was not the intention of the parties to put the respondent to legal proof of the items of fraud by which he had been injured, but to have him satisfied to the amount which in his conscience he believed he had suffered; the object of the assignment was full and perfect indemnity to him, for all the consequences of the fraud, as clearly appears by the pre-

amble and recitals. Their extent was known to complainant, but by his conduct, he has put it out of the power of respondent to ascertain it; in such a case the court will not control his conscience, when he swears to a certain sum, by putting him to the proof of items. The parties have made a standard, by which the trustee is authorized to settle the accounts, without any provision for any appeal from his judgment, as to what is a reasonable satisfaction. The court will not undertake to correct his judgment and oath, merely because there is a defect of proof as to items or amount; unless there is clear evidence that he has abused his discretion, or has fixed an amount unjust at the first blush, the complainant must disprove it clearly. If any other rule is adopted, the parties will be put in the same position, as if their conduct had been fair on both sides, the account between them will be a mere adjustment of balances, appearing on the books, or by legal evidence of charges and credits. The position into which complainant seeks to force us is this, he destroys our means of accounting, and then calls on us for a strict account by the rules of legal evidence; but he has placed us in a position from which no court of equity can remove us. By the assignment, the legal right to all the partnership effects is fully vested in the respondent, the court can take from him only so much, as the complainant can show is retained against equity and good conscience. His position is also a fixed one, he admits fraud in his bill, states the misentries, in addition to which we have proved the suppression and spoliation of the books, accounts and papers of the firm, in which position every presumption is against him. Courts of equity go further than courts of law, in odium spoliatoris, the oath of the party injured will support a charge. [Childrens v. Saxby,] 1 Vern. 207; Childrens v. Saxby, 12 Vin. Abr. 10, 15 Vin. Abr. 312, 16 Vin. Abr. 356. So where a will is destroyed, it will be presumed that it gave the opposite party a right to recover. 2 Poth. 336; [Cowper v. Cowper,] 2 P. Wms. 720; Cowper v. Cowper, 1 Bridg. Eq. Index, 456, pl. 225. The same rule is applied to deeds, books, papers, accounts, &c.; their suppression raises the presumption that they contained what was against the party suppressing, and in favour of the other party, whose oath as to their contents must be admitted from necessity. The court will construe the assignment liberally in favour of the respondent, it was avowedly made for his benefit, its objects were fair and just; and though in terms it extends only to errors and misentries, it will embrace all errors to his injury arising from whatever cause. He must have complete indemnity, and if the words used to afford it are not broad enough to comprehend each item of loss, the court will reform it according to the manifest declared intention of the parties. As the complainant was conusant of his own acts, and the re-

spondent ignorant, except so far as they .had become known to him, he shall not be prejudiced by an omission in the preamble and recitals, which was the language of the complainant.

In his answer, respondent averred his losses to amount to 5000 dollars, he claimed this amount before the master, and yet claims it; he has a right to produce all the evidence in his power in favour of his claim, either by proof of items or of undefined injuries, not choosing to stand on his oath alone. But this cannot be deemed an implied waiver of any right which his position gave him, and it is not pretended that he made any express waiver. His first, second, third and fifth exceptions meet the objections of the complainant's counsel, pointing to errors of the master, in confining himself to credits specifically proved by items and in amount, and disallowing any claim for the injury sustained by loss of the credit of the firm, and its consequent premature dissolution, while its business was highly profitable. An allowance for this was expressly claimed in the answer, and ought to have been made by the master. The court may not be bound by the oath of the respondent as to any precise amount, but must make some reasonable allowance for an injury which is apparent. As reported by the master, our credits are such only as are sustained by strict proof.

Before BALDWIN, Circuit Justice, and HOPKINSON, District Judge.

BALDWIN, Circuit Justice. This case comes before the court on exceptions to the report of the master, to whom this cause was referred on the 10th of June last, for an account by the defendant. The account exhibited a balance of partnership effects in the hands of the defendant of 25,498 dollars 91 cents, to which both parties agreed. They likewise agreed on the sum on which a commission should be charged by defendant for his services, being 69,726 dollars 55 cents, but they differed on the amount of commission, the defendant claiming five per cent, the plaintiff willing to allow two and a half, the master allowed four, to which both parties except.

In the case of Burr v. M'Ewen, [Case No. 2,193,] Hale and Davidson, at April term 1830, this court gave their views on the subject of commissions to trustees, and are satisfied that they are in accordance with the settled judicial opinion and usage of the state. In Pusey v. Clemson, 9 Serg. & R. 209, and in the case of Walker's Estate, Id. 225, the supreme court declare, that common opinion and understanding have fixed on five per cent as a reasonable allowance, and that cases in which the court may fix on a higher or lower rate, are to be considered as exceptions arising under the particular circumstances of the case. We think this a reasonable and safe rule, which will prevent much litigation if so understood and adhered to, and in this case we perceive no such circumstances as to induce us to depart from it.

The complainant comes into a court of equity demanding a retransfer of his part of partnership effects, included in the assignment, alleging that the defendant has in his hands a balance of money justly due to the plaintiff, or his stock in the firm, which he cannot retain in good conscience, and withholds in bad faith. In such a case the court is not governed by the technical and strict legal construction of the words of the assignment, but the real meaning and intention of the parties in relation to the subject matter and object for which it was made. Though they were satisfied that the words were not broad enough to include all the errors and misconduct of the plaintiff which had been injurious to the defendant, we would not decree of course for the complainant as to those items, but adopt the principles of equity which the supreme court lay down as incontrovertible. Hunt v. Rousmanier, 1 Pet. [26 U. S.] 13: "Where an instrument is drawn and executed, which professes or is intended to carry into execution an agreement, whether in writing or by parol, previously entered into, but which by mistake of the draftsman, either as to fact or law, does not fulfil or violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement." They will compel "the delinquent party fully to perform his agreement, according to the terms of it and the manifest intention of the parties; so if the mistake exists, not in the instrument which is intended to give effect to the agreement, but in the agreement itself, and is clearly proved to have been the result of ignorance of some material fact, a court of equity will in general grant relief according to the nature of the particular case in which it is sought."

Deciding this question by these principles, we feel bound to consider the agreement and assignment as embracing all errors and misentries, whether of cash on the cash books, errors in not charging the plaintiff with goods taken by himself, or receiving money from customers and not accounting for it, and any other errors or misentries in keeping the books which would be injurious to the interest of the defendant. We do not think it important to examine minutely whether Mr. Odenheimer knew of the omission to charge the goods taken by plaintiff, or of any other misentries than such as relate to those in the cash book; if he was ignorant of the existence of any others, it would be a good reason for our reforming the assignment, especially when their existence was known to plaintiff. His concealment of them from his partner, when about executing a paper intended to be a complete indemnity against all errors and misentries in keeping the books of the firm, would be a complete bar to any equitable relief, when we had before us abundant proof of errors and misconduct on his part highly injurious

to defendant. We would not take from him the security of a fund given to him for an indemnity, until it had been made effectual for all the objects intended, and for which the plaintiff was in equity bound to make a provision. If the defendant had a knowledge of all the errors committed by plaintiff, it would not alter the case, the words of the assignment are broad enough to cover them; the plaintiff knew of them, and agreed that defendant should retain the stock assigned till all losses, deficiencies and injuries resulting from them should be made up to his reasonable satisfaction.

We do not mean to decide, that the defendant is to be the judge of the amount which he shall retain out of the fund assigned; he holds it in trust, subject to the supervision of this court; for his own use, so far as he can reasonably satisfy us, that any alleged errors exist which operate to his injury, and for the plaintiffs for the residue. The cases cited by the plaintiffs' counsel, fully support their position in this respect, and we think it the fair and equitable construction of the assignment. Thus far the case is attended with no difficulty, but a very serious one has occurred in ascertaining the sum which we shall decide, on all the circumstances of this case, to be a reasonable satisfaction to the defendant for the errors and misconduct of the plaintiff. The reference to the master was a general one for an account, and his report does not find facts, on the legal result of which we are to pronounce an opinion as on a special verdict or case stated. 2 Madd. Ch. [Pr.] 506. In stating the account between the parties, he makes specific allowances to the defendant, on account of errors and misentries, and returns the whole evidence for our consideration on the propriety of these allowances, which are the subject of exception by both parties. That errors and misentries, to a considerable amount, have been made by the complainant, is admitted in the bill and the assignment, it is also abundantly proved by all the witnesses. The burning of the books has not been conclusively brought home to the plaintiff, but the evidence is of that strong and convincing nature, as leaves no doubt on our mind that the act was committed by the complainant, and so we consider the fact to be.

Under these circumstances, he calls for the interposition of this court, to compel the plaintiff to account, to pay the balance in his hand, and retransfer what remains of his share of the fund assigned without producing any statement of the errors or misentries, giving no information which could tend to ascertain the amount, putting no estimate on the sum he thought himself entitled to for extra service, or what he had taken under such pretext, when he could have done it from his own knowledge. He does not swear to his bill, or even positively aver, that he had made no other errors or misentries to the injury of his partner than are referred

to in his bill, or were proved before the master. Where papers are destroyed or suppressed by a party with a deliberate design to defraud or injure another, the presumptions of law are very strong against him, and there cannot well be a case more strong against a complainant in equity than this. Courts of law are very severe in punishing fraud, but when it is aggravated by the destruction or suppression of papers or books which would, if produced, be the means of detecting it, courts of equity will go beyond, and even contrary to the rules of law, and presume most liberally, in odium spoliatoris. [Philips v. Philips,] 1 Ch. Cas. 293; [Cowper v. Cowper,] 2 P. Wms. 748; [Cookes v. Hellier,] 1 Ves. Sr. 235; [Garth v. Cotton,] 3 Atk. 755, 756; [Bowles v. Stewart,] 1 Schoales & L. 222; 5 Brown, Parl. Cas. 300, 324; [Childrens v. Saxby,] 1 Vern. 207.

A court of equity will entertain jurisdiction of a trespass, where it is done secretly, so that it cannot be proved easily, as where on his own ground a man digs under ground to another's mineral. East India Co. v. Sandys, 1 Vern. 127, 130. So where an interloper trades to the East Indies, he shall admit his trading, and to some certain amount, because it is difficult of proof. Id. 130; [East India Co. v. Evans,] Id. 307. So where a bailiff took a sum of money under an execution issued in breach of an injunction in odium spoliatoris, "the oath of the party injured is a good charge on him who hath done the wrong." Childrens v. Saxby, 1 Vern. 207; 1 Eq. Cas. Abr. p. 11, pl. 2; Id. p. 229, pl. 11. So where a man ran away with a casket of jewels, the oath of the party injured was allowed as evidence, (East India Co. v. Evans, 1 Vern. 308;) but not to conclude the party committing the fraud, (Plampin v. Betts, Id. 272.) Where a plaintiff in equity has been guilty of fraud, and his bill is dismissed, the court will decree costs to the defendant, to be taxed on his oath. Dorrington v. Jackson, Id. 449, 450. So as to the plaintiff where a bill of exchange was obtained by fraud and the oath of defendant was falsified. Dyer v. Tymewell, 2 Vern. 122, 123.

These cases fully establish the principle, that in cases of fraud, suppression and spoliation, the oath of the party injured is evidence, but not conclusive; the court must judge of the weight it is entitled to, under all the circumstances of the case. The mere circumstance of a party having destroyed or suppressed a deed, book or paper, will not induce a court of equity to decree a penalty against him to deprive him of what may be his just right, to dispense with such secondary proof of the existence and contents of the paper which has been so suppressed or destroyed as may be in the power of the party injured to produce, or to give a decree in his favour, without some proof. [Cowper v. Cowper,] 2 P. Wms. 738, 748; [Saltern v. Melhuish,] Amb. 247, 249; Saltern v. Mel-

huigh, [Bowles v. Stewart,] 1 Schoales & L. 222.

It is difficult to define precisely what will be deemed some proof, as much must necessarily depend on the particular case; but there can be little danger in laying it down as a general rule, that where there is the least positive proof of the existence of a paper, or where it may ·be supposed or inferred from appearances out of which such supposition or inference necessarily or naturally arises, proof of spoliation would entitle the opposite party to a decree. Cowper v. Cowper, 1 P. Wms. 750. If there has been actual spoliation by a party, every thing would be presumed against him in favour of those setting up a prima facie title; and though there is no actual spoliation proved, yet a complete suppression would, for the purposes of the suit, be equal to a spoliation. Bowles v. Stewart, 1 Schoales & L. 222. Where a widow made a deed of the greatest part of her estate, to the. value of 800 pounds, .to trustees for her children by the first husband, which the second husband destroyed, he was decreed to pay the amount without any account of the estate. Hunt v. Matthews, 1 Vern. 408. So where a defendant swore that he had burnt a deed, and afterwards produced it, he was compelled to admit the deed as laid in the bill. Sanson v. Rumsey, 2 Vern. 561. Where a defendant in a bill in equity swore that she had delivered a will to the plaintiff, which he did not produce, she was held not to be bound to answer till the will was produced by plaintiff; on a final hearing, it was decreed, that having suppressed the will, it ought to be presumed most strongly against him, and to be taken as set forth by the party claiming under it. Hampden v. Hampden, 3 Brown, Parl. Cas. 250, 252. Where a deed limiting a term was burnt by the defendant, who contended that the limitation was void, the court decided, that since a term might be limited in such a manner as to take effect, they would intend it to have been so limited in that case, and decreed a conveyance accordingly. Dalston v. Coatsworth, 1 P. Wms. 731, 732, &c. So where title deeds are suppressed, the court will decree possession to the party claiming under them till produced. King v. Hounsdon, [Arundel,] Hob. 109; [Tucker v. Phipps,] 3 Atk. 360. Where on an account being decreed, the master reported that defendant had suppressed and embezzled some pages of accounts in a bundle, or that it had been. done with his privity, the court disallowed his whole accounts for diet, &c., on account of embezzlement. Wardour v. Berisford, 1 Vern. 452; [Cowper v. Cowper,] 2 P. Wms. 749. Where a will is suppressed by the executor or heir, he shall ɒe compelled to pay a legacy bequeathed by it before probate, and without a citation in the spiritual court; equity interferes on the head of spoliation and suppression. [Tucker v. Phipps,] 3 Atk. 360.

From these cases we may take the rules of equity to be well established, that where a deed, a will or other paper is proved to be destroyed or suppressed, or there is vehement suspicion of its having been done, the presumption in odium spoliatoris applies in favour of the party who claims under such paper, though the contents are not proved. The fact of spoliation, suppression or embezzlement may be proved by the answer or oath of the opposite party, so may the contents of the paper; the same rule applies to matters of account; the mere embezzlement of books or accounts is sufficient to authorize a rejection of claims by the spoiler though supported by evidence, or the party spoiled may rebut the claim by his oath. But where he comes to charge the spoiler in account, in order to raise a debt against him, he must give some evidence beyond the fact of spoliation, his oath would be admissible evidence, its effect depending on the circumstances of the case. If he relies on other evidence he must make out a prima facie case, by proof competent for a court of equity to presume, a court of law to give a judgment on a demurrer to the evidence, or a jury to find a verdict in favor of the charge set up. This is what is understood by some evidence, it may be slight, yet if it conduces to prove the charge it is legally sufficient, its weight or credibility is a matter of discretion and circumstance. No specific sum can be charged against the spoiler on proof of the mere fact ⹁of spoliation, herein the rule differs from that which applies to a claim of property under a deed or will on which the right depends, and the thing claimed is ascertained.

The circumstances of this case would justify the utmost latitude of presumption in a court, jury, master or auditors; the fraud was premeditated, the spoliation wilfully made to conceal it, and we would not disturb a verdict or report which did not at the first blush appear to have debited the complainant with items, in support of which there was no evidence, conducing to make out the charge.

So far as the master has debited the complainant, his report is confirmed; but from the evidence returned with his report he seems to have held the defendant to proof not required by any rule, and to have withheld all credits not definitely proved, or at least to have allowed none which were not supported by such evidence as would have supported charges in an ordinary case between partners or merchant and customer. Were we to confirm this report, on a consideration of the evidence which accompanies it, it would confound all distinction between the spoiler and the despoiled, and tend to encourage rather than to suppress spoliation by throwing on the innocent party the burthen of supplying the evidence which the other had destroyed.

The master has overlooked entirely one

powerful item of evidence, the admissions in the bill of the complainant, which are conclusive on him, as well as on a master, a jury or a court, who can approve of nothing in contradiction or opposition to such admissions. East India Co. v. Keighley, in the house of lords, 4 Madd. 15, 21. These admissions must be carried into every act of fraud, in taking money or goods furtively, the amount of which may be presumed to be equal to the object for which they were taken; that is, to the saving of clerk hire for the services performed. We should forget the first principles of justice in confining the respondent to the rules by which the master has acted. One of the clerks testified to repeated acts of the complainant in taking goods not charged, of which he kept a memorandum, amounting to .570 dollars, exclusive of what was allowed by the master; though the proof was not specific, we think it reasonably sufficient to justify giving the defendant credit to this amount, and direct it accordingly.

We have not thought it proper to direct any credits on the general averment in the answer that the injuries sustained amounted to 5000 dollars; it is too vague to act upon satisfactorily. Had it been definite as to any particular fact, or the amount of injury sustained under any defined item, we might have directed a further allowance to the defendant, but it would be acting too much on vague conjecture for us to specify any particular amount. Though we should not have disturbed the report if the master had done it, we cannot feel justified in decreeing any particular charge under this general allegation.

We have allowed no damages for breaking up the business of the firm, no sum was specified in the answer as applicable to this item, and no evidence is before us which enables us to ascertain what may be just; there is therefore no prima facie case, either by the oath of the respondent or the evidence, for the allowance of any specific sum on this ground.